# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ADDISON AUTOMATICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 13-cv-1922 |
| | ) | |
| v. | ) | Hon. John Z. Lee |
| | ) | |
| HARTFORD CASUALTY INSURANCE | ) | |
| COMPANY, and TWIN CITY FIRE | ) | |
| INSURANCE COMPANY | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In this case, Plaintiff Addison Automatics, Inc. ("Addison") seeks a declaratory judgment against Defendants Hartford Casualty Insurance Co. and Twin City Fire Insurance Co. (collectively, "Defendants") that would require them to provide insurance coverage pursuant to two separate policies for a consent judgment arising out of an underlying "blast-fax" lawsuit. In the underlying proceeding, Addison as the plaintiff had filed a class action against the defendant Domino Plastics Co., Inc. ("Domino") under the Telephone Consumer Protection Act, the Illinois Consumer Fraud and Deceptive Business Practices Act, and common-law conversion. Domino and Addison eventually entered into a classwide settlement, and as part of the settlement Domino assigned to Addison its rights in the insurance policies to satisfy the underlying judgment. Addison, as Domino's assignee, then filed this lawsuit to enforce the insurance policies against Domino's insurers, namely, Defendants, and Defendants in turn now seek summary judgment as to Addison's claims.

Relying principally on two similar exclusionary provisions in the insurance policies, Defendants argue that there is no coverage for the underlying complaint, and consequently there

1

is no duty to indemnify. Addison argues that there is coverage and Defendants had a duty to defend because an alternative count for conversion in the underlying complaint triggered coverage. For the reasons provided herein, the Court grants Defendants' motion for summary judgment.

## I. Factual Background[1]

### A. *Addison Automatics, Inc. v. Domino Plastics, Inc. et al.*

This dispute concerns an underlying class action lawsuit in which Addison sued Domino for certain unsolicited facsimiles sent to the class members. *See* Defs.' LR 56.1(a)(3) Stmt. ¶¶ 1–3, 6–7. In the underlying lawsuit, filed on August 13, 2010 as *Addison Automatics, Inc. v. Domino Plastics, Inc. et al*, Case No. 10 CH 34958 (the "*Domino* lawsuit"), Addison asserted three claims: (1) violations of the Telephone Consumer Protection Act ("TCPA"); (2) common-law conversion; and (3) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). *See id.* ¶¶ 6, 8; *see also* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 1. Addison represented the class in the *Domino* lawsuit. *See* Defs.' LR 56.1(a)(3) Stmt. ¶ 14.

The parties to the *Domino* suit ultimately reached a class-wide settlement agreement on September 14, 2012. *See* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 19.[2] Addison does not dispute this fact; instead, it disputes Defendants' characterization of the settlement as a "consent judgment" and

---

[1] The following facts are undisputed, unless otherwise noted.

[2] Addison offers a section of additional facts concerning the *Domino* lawsuit. *See generally* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 14–18. Defendant objects to these facts as irrelevant to the motion. *See* Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 14–18. The Court sustains this objection. The relevant focus of this insurance dispute is the complaint in the underlying litigation along with the text of any applicable policies or exclusions. *See Supreme Laundry Serv., L.L.C. v. Hartford Cas. Ins. Co.*, 521 F.3d 743, 746 (7th Cir. 2008) ("Under Illinois law, to determine if the insurer has a duty to defend its insured, 'the court must look to the allegations in the underlying complaint and compare these allegations to the relevant provisions of the insurance policy.'") (quoting *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992)). Additional evidence that amounts to a relitigation of the claims in the underlying lawsuit is not relevant here.

argues that the judgment was a class judgment fully evaluated for reasonableness. *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 9. Whether Domino assigned its rights to Addison (as opposed to the entire class) also is disputed by Defendants, but for purposes of this motion, they have conceded this point. *See* Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 20.

The court in the *Domino* suit granted preliminary approval of the settlement on October 2, 2010. *See* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 21. The court held a fairness hearing on December 17, 2012, approved the settlement, and entered judgment. *See id.* ¶ 22. The approval order indicated that Domino "believed that by sending advertisements to persons whom [sic] had previously contacted Defendant, by putting opt out language on each ad and complying with opt out requests, that it was sending advertisements to persons who had provided permission to do so" and "did not intentionally, willfully, or knowingly violate the TCPA." *Id.* ¶ 23 (quoting Pl.'s LR 56.1(b)(3)(C) Stmt., Ex. 5 (Final Approval Order)). The court entered judgment against Domino in the amount of $17,751,363.81 on Counts I, I, and III of Addison's First Amended Complaint. *See id.* ¶ 24. The court also awarded post-judgment interest. *See id.* ¶¶ 24–25.

## B.    Tender of Claims to Defendants

As part of the settlement agreement, Domino assigned its rights in its insurance policies to the class certified in the *Domino* lawsuit. *See* Defs.' LR 56.1(a)(3) Stmt. ¶ 13; *see also* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 13. Domino tendered the original complaint in the *Domino* lawsuit to Defendants by letter dated August 26, 2010. *See* Defs.' LR 56.1(a)(3) Stmt. ¶ 17. This original complaint asserted all three causes of action mentioned above. *See id.* ¶ 19.

The plaintiffs in the *Domino* lawsuit eventually filed a First Amended Complaint, and the parties in this case dispute whether the First Amended Complaint in the *Domino* lawsuit, which was the operative complaint at the time of *Domino* settlement, was tendered to Defendants. For

3

their part, Defendants believe that Domino never tendered the First Amended Complaint and that they only received it when Addison filed the present declaratory judgment action. *See id.* ¶¶ 20– 21. Addison, by contrast, believes that the First Amended Complaint was tendered to Defendants. *See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 20. Be that as it may, it is undisputed that on September 27, 2010, Defendants informed Domino by letter that "if the claim is amended to add allegations that you believe may trigger a duty to defend under the terms of the policies, you should submit a copy of the amended pleading that might trigger coverage." *See* Defs.' LR 56.1(a)(3) Stmt. ¶ 22.

Additionally, the parties dispute the scope of the class and the precise nature of the claims in the *Domino* lawsuit. Addison contends that, as part of the conversion claim, it sought relief for a class of similarly-situated persons who received junk faxes generally and was not limited to those who received junk faxes containing advertisement content. *See* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 2, 8. Defendants respond that that the scope of the class and conversion claim in the *Domino* lawsuit was limited to "unsolicited advertising facsimiles." *See* Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 2, 8. The parties dispute the scope of the ICFA claim on similar grounds. *Compare* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 9; Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 9.

### C. Defendants' Insurance Policies

At the center of this dispute are two insurance policies that were issued by Defendants to Domino. Both policies were procured in New York. *See* Defs.' LR 56.1(a)(3) ¶ 16.

### 1. The Twin City Fire Insurance Policy

Defendant Twin City Fire Insurance Co. issued a commercial general liability policy to Domino, Policy No. 12 UUN EO4099 ("Twin City Policy"), for the period from November 18, 2007, to November 18, 2008. *See* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 26. In relevant part, the Twin

City Policy covers "bodily injury" and "property damage" that is caused by an "occurrence." *See* Defs.' LR 56.1(a)(3) Stmt. ¶ 10. An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See id.* The Twin City Policy does not define "accident." *See* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 28. The Twin City Policy also covers "personal and advertising injury" arising out of a number of enumerated offenses. *See* Defs.' LR 56.1(a)(3) Stmt. ¶ 10.

In addition to stating what it does cover, the policy also contains provisions that delineate matters that are not covered by the policy. Salient to this dispute, the Twin City Policy contains an exclusion, Form CG 00 67 03 05, which reads in relevant part:

**EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.    The following exclusion is added to paragraph **2.**, **Exclusions of SECTION I – COVERAGES A – Bodily Injury And Property Damage Liability**:

**2.    Exclusions**

This policy does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Bodily injury," or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a.    The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

b.    The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

     c.     Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

*See id.* ¶ 10 (emphasis in original). An identical exclusion was added to the Twin City Policy's coverage for "personal or advertising injury." *See id.*

As part of its Rule 56(d) request for additional discovery, Addison disputes that the TCPA exclusion was ever made part of the Twin City Policy because Defendants may have failed to comply with applicable "reduction in coverage" requirements. *See* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 29. Defendants counter that Addison offers no evidence on this point. *See* Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 29. In addition, Defendants point out that the 2007–08 policy was the first in a set of policies issued to Domino and not a modification of an existing policy. As a result, at least according to Defendants, the 2007–08 policy and its exclusions were exempt from the "reduction in coverage" requirements. *See id.*

### 2. The Hartford Policy

Defendant Hartford Casualty Insurance Co. issued an umbrella policy to Domino, Policy No. 12 RHU E03658 ("Hartford Policy"), which also applied during the period from November 18, 2007, to November 18, 2008. *See* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 31. Like the Twin City Policy, the Hartford Policy covers "bodily injury," "property damage," and "personal and advertising injury" that are caused by an "occurrence." *See* Defs.' LR 56.1(a)(3) Stmt. ¶ 11. The Hartford Policy defines "occurrence" as:

    1.     With respect to "bodily injury" or "property damage" an accident, including continuous or repeated exposure to substantially the same general harmful conditions; and

    2.     With respect to "personal and advertising injury" an offense described in one of the numbered subdivisions of that definition in the "underlying insurance."

*See id.* "Accident" is defined to include "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'" *See id.*

The Hartford Policy also contains an exclusion labeled Form XL 23 25 12 05, which reads in relevant part:

### EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

UMBRELLA LIABILITY POLICY

The following exclusion is added to paragraph **B., Exclusions of SECTION I – COVERAGES:**

This policy does not apply to:

**Distribution Of Material in Violation Of Statutes**

"Bodily Injury," "property damage," or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a.   The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

b.   The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c.   Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

*See id.* (emphasis in original). The TCPA exclusion in the Hartford Policy is substantially identical to the exclusion in the Twin City Policy.

Again, Addison disputes whether this TCPA exclusion is validly part of the Hartford Policy. Addison argues in particular that Defendants have not provided any evidence that they complied with applicable regulatory filing and approval requirements when inserting Form XL

7

23 25 12 05 into Policy No. 12 RHU E03658. *See* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 35. Defendants again respond that these requirements did not apply. *See* Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 34–35.

## II. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court gives "the non-moving party the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP,* 719 F.3d 785, 794 (7th Cir. 2013). In order to survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts[,]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), and instead "must establish some genuine issue for trial such that a reasonable jury could return a verdict in [their] favor." *Gordon v. FedEx Freight, Inc.,* 674 F.3d 769, 772–73 (7th Cir.2012). The Court will, however, "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statements." *Bordelon v. Chi. Sch. Reform Bd. of Trs.,* 233 F.3d 524, 529 (7th Cir. 2000).

## III. Analysis

### A.    The TCPA Exclusions Preclude Coverage[3]

Defendants argue that summary judgment must be entered in their favor because under the TCPA exclusions there is no coverage under the policies and, therefore, no duty to indemnify. Addison, not surprisingly, disagrees. The legal framework to resolve this issue is well-established.

"Illinois law, which the parties agree controls this case, treats the interpretation of an insurance policy and the respective rights and obligations of the insurer and the insured as questions of law that the court may resolve summarily." *Roman Catholic Diocese of Springfield in Ill. v. Maryland Cas. Co.*, 139 F.3d 561, 565 (7th Cir. 1998) (citing *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993)). "To determine whether the insurance company owes its insured a defense, the court must simply compare the allegations of the underlying complaint against the insured to the pertinent provisions of the insurance policy." *Id.* (citing *Lapham–Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 655 N.E.2d 842, 847 (Ill. 1995)). Furthermore, "[t]he duty to indemnify . . . arises only in circumstances of actual coverage; if the insurance policy does not cover what is alleged in the

---

[3]     The parties both agree that Illinois law applies to the interpretation of the insurance policies at issue. With respect to the law of estoppel, however, the parties disagree over which state's law applies. Defendants urge the Court to apply New York law. *See* Defs.' Reply 16–17. Addison argues that Illinois law applies because estoppel is not contractual but rather equitable. *See* Pl.'s Mem. Opp'n 19–20. Under either state's law, however, estoppel would be inapplicable here. Under New York law, a party is not estopped from raising its coverage defenses to a duty to indemnify even if it is found to have previously breached its duty to defend. *See K2 Inv. Grp., LLC v. Am. Guarantee & Liab. Ins. Co.*, 6 N.E.3d 1117, 1120 (N.Y. 2014), *reargument denied*, 10 N.E.3d 1146 (2014). And under Illinois law, because the Court finds below that Defendants properly denied coverage and had no duty to defend in the underlying lawsuit, Addison cannot invoke the estoppel doctrine. *See G.M. Sign*, 18 N.E.3d at 77 (citing generally *Emp'rs Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122 (Ill. 1999)).

claim, the insurer will not have a duty to indemnify based on that claim." *Keystone Consol. Indus., Inc. v. Employers Ins. Co. of Wausau*, 456 F.3d 758, 762 (7th Cir. 2006).

Here, where "an insurer denies a duty to defend based on an exclusionary clause within a policy, 'its application must be clear and free from doubt.'" *Hurst-Rosche Engineers, Inc. v. Commercial Union Ins. Co.*, 51 F.3d 1336, 1342 (7th Cir. 1995) ((citing *Ins. Co. of Ill. v. Markogiannakis*, 544 N.E.2d 1082, 1094 (Ill. App. Ct. 1989)). "The burden of proving that a claim falls within an exclusion rests squarely on the insurer," and "[a]ny ambiguities within the policy must be construed in favor of the insured." *Id.* (citing *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991)). "However, the court must not create an ambiguity where none exists; a clear and unambiguous provision must be applied as written." *Id.*

Defendants' principal argument for the application of the TCPA exclusions rests on *G.M. Sign, Inc. v. State Farm Fire & Cas. Co.*, 18 N.E.3d 70 (Ill. App. Ct. 2014), *modified on denial of reh'g* (Sept. 2, 2014), *appeal denied sub nom. G.M. Sign, Inc. Indv. v. State Farm Fire & Cas. Co.* (Ill. Jan. 28, 2015). A brief history of that case is instructive.

In August 2010, G.M. Sign filed a lawsuit, on behalf of itself and a putative class, against Michael Shane and his company, Academy Engraving Company (collectively, "Schane"), for sending unsolicited fax advertisements to the class. G.M. Sign brought claims under the TCPA, the Illinois Consumer Fraud and Deceptive Business Practices Act, and common-law conversion. *See G.M. Sign*, 18 N.E.3d at 73. Schane tendered the underlying complaint to their insurance company, State Farm, seeking coverage. State Farm denied coverage for the claims based on an exclusionary provision in the insurance policy. The provision, which was entitled the "Distribution of Material in Violation of Statutes Exclusion Endorsement," excluded coverage

for "[b]odily injury, property damage, personal injury, or advertising injury arising directly or indirectly out of any action of omission that violates or is alleged to violate: (a) the Telephone Consumer Protection Act (TCPA); or . . . . (c) Any statute, ordinance or regulation . . . that prohibits or limits the sending, transmitting, communicating or distribution of material or information." *Id.* at 74.

The parties to the underlying case settled and, as part of the settlement, they stipulated to a class consisting of "all persons to whom [Schane] sent advertising facsimiles" during the class period. *Id.* As part of the settlement, the parties agreed that the plaintiffs would not execute the judgment against Schane personally, but would satisfy the judgment only against his insurer, State Farm. *Id.*

The trial judge certified the class proposed by the parties, preliminarily approved the settlement, and scheduled a date for its final approval. However, before final approval could be granted, G.M. Sign asked for leave to amend the complaint so that it could "plead into possible insurance coverage available under Schane's insurance policies." *Id.* at 75. To accomplish this goal, the amended complaint alleged that G.M. Sign had received an "unsolicited facsimile" and that the class members received "the same or similar unsolicited facsimiles," rather than the "fax advertisements" as alleged in the original complaint. *Id.* Additionally, the conversion and consumer fraud counts in the amended complaint incorporated only those allegations that contained no reference to the TCPA. Finally, G.M. Sign amended the class definitions so that the conversion and consumer fraud classes were not limited to individuals who had received facsimiles that contained advertisements.

G.M. Sign's motion to amend was granted by the trial court. And the trial court granted final approval of the original settlement.

Faced with State Farm's refusal to acknowledge coverage under the policy, G.M. Sign filed a declaratory judgment action to enforce the insurance contract. *See id.* at 75–76. G.M. Sign and State Farm then filed cross-motions for summary judgment on the duty to indemnify. *See id.* at 76. The trial court found that State Farm owed a duty to defend and indemnify under the policy, but rejected GM. Sign's argument that State Farm should be estopped from raising any defenses to coverage whatsoever. Both parties appealed.

To circumvent the exclusionary provision, G.M. Sign argued to the Illinois Court of Appeals that: "(1) the alternative counts [in the amended complaint] had different elements and sought different damages than the TCPA count, and (2) the alternative counts were premised on different facts than the TCPA count and were broad enough to include faxes that did not violate the TCPA." *Id.* at 78. The appellate court, however, considered the language of the exclusionary provision and interpreted the phrase "arising out of" to mean "but for." *See id.* With this construction in mind, the court rejected G.M. Sign's first argument and held, "[R]ather than comparing the elements of the various causes of action alleged in the amended complaint, we look at whether, but for Schane's alleged act of sending faxes that violated the TCPA, G.M. Sign would have suffered injury." *Id.* The appellate court also succinctly dispatched G.M. Sign's second argument, stating, "All three counts incorporated by reference the allegations that, on or about September 6, 2007, G.M. Sign received an 'unsolicited facsimile' and that the class members received 'the same or similar unsolicited facsimiles.'" *Id.* at 79.

Returning to the present case, both parties agree that this Court must apply Illinois law in adjudicating this case. Because the parties have not pointed to a controlling Illinois Supreme Court case (and none can be found), however, this Court must predict what the Illinois Supreme Court would do. *See MindGames, Inc. v. W. Publ'g Co., Inc.,* 218 F.3d 652, 655–56 (7th Cir.

2000). But the Court is not rudderless. "[I]n the absence of prevailing authority from the state's highest court, federal courts ought to give great weight to the holdings of the state's intermediate appellate courts and ought to deviate from those holdings only when there are persuasive indications that the highest court of the state would decide the case differently from the decision of the intermediate appellate court." *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002) *certified question answered*, 202 Ill. 2d 586, 782 N.E.2d 258 (2002). Given the factual similarities between this case and *G.M. Sign*, the decision of the Illinois appellate court in that case is entitled to "great weight."[4]

That said, Addison urges the Court not to follow *G.M. Sign* for a number of reasons. But each of them can be succinctly resolved. First, Addison argues that *G.M. Sign* is "not released for publication" and so cannot be cited as authoritative. *See* Pl.'s Mem. Opp'n 14. But *G.M. Sign* subsequently has been published. Second, Addison contends that *G.M. Sign* conflicts with a prior appellate holding in the same case, *G.M. Sign, Inc. v. Schane*, 985 N.E.2d 685 (Ill. App. Ct. 2013). *See* Pl.'s Mem. Opp'n 14 n.2. The *G.M. Sign* court, however, addressed this very issue, noting:

> Thus, we assumed, *without deciding,* that for the purpose of demonstrating State Farm's due diligence with respect to the original action, the amended complaint potentially brought the claims stated therein within coverage. We said, in other words, that, even if the amended complaint stated claims that potentially would trigger coverage, State Farm's refusal to defend did not indicate a lack of due

---

[4]    In addition to the obvious similarities in the underlying allegations, the policy language, and the arguments offered by the parties, there are a number of other factual similarities. Here, like in *G.M. Sign*, the underlying class of claimants were defined in the settlement agreement to be "all persons to whom [Domino] sent advertising facsimiles between January 1, 2007 and October 30, 2008." *Compare* Pl.'s Mem. Opp'n, Ex. 3, Settlement Agreement, 1–2; *G.M. Sign*, 18 N.E.3d at 73–74 (defining similar class). And both *G.M. Sign* and this case settled, in part, because of the treble damages available under the TCPA. *Compare* Pl.'s Mem. Opp'n, Ex. 3, Settlement Agreement 2 ("[A] finding of liability under the TCPA with statutory damages of $1,500 per unsolicited fax would result in a damage award exceeding $217,500,000.00 . . . . [and] such a judgment would bankrupt Defendant and cause the dissolution of its business."); *G.M. Sign*, 18 N.E.3d at 82 (quoting settlement agreement referencing treble damages under the TCPA).

diligence, because the amended complaint was filed only after the case was settled. Nothing in the present opinion conflicts with *Schane*.

*G.M. Sign, Inc.*, 18 N.E.3d at 81. (emphasis in original).   In any case, Addison has not pointed to a direct conflict between *G.M. Sign* and another Illinois appellate case that would require a more exhaustive survey of Illinois law. *See Allstate Ins. Co.*, 285 F.3d at 633–34.

What is more, the Court finds the analysis of the *G.M. Sign* court to be well-founded. As in *G.M. Sign*, the parties here dispute the application of an insurance policy exclusion for any injury "arising directly or indirectly out of any action or omission that violates or is alleged to violate" the TCPA. As in *G.M. Sign*, Addison filed an amended complaint to try to circumvent the exclusionary provisions and now contends that the conversion claim in the *Domino* lawsuit requires different elements of proof than a TCPA claim. Addison also argues that the conversion claim that is alleged in the amended complaint is based, not only on unsolicited faxes that contained advertisements, but unsolicited faxes that did not contain advertisements, thus asserting a claim that falls outside of the exclusions' scope. Although these arguments may have superficial appeal, an examination of the amended complaint and the policy language reveals their flaws.

As for Addison's first argument, the Court agrees with the *G.M. Sign* court that, rather than peering myopically at the legal elements of the conversion claim, the inquiry must be driven first and foremost by the language of the policies themselves. A close reading of the exclusionary provisions reveal that their focus is not on the legal elements of a particular claim asserted by the underlying plaintiff, but the factual cause of the "bodily injury" and "property damage" that is alleged in the underlying complaint. So long as the injury and damage alleged in the operative complaint "arises directly or indirectly out of any action or omission that violates or is alleged to violate" the TCPA, the claims asserting the injury (whatever the particular legal

14

theory may be) falls within the purview of the exclusions. That is what the language of the exclusionary provisions require.

Perhaps recognizing this point, Addison offers the further argument that, to the extent its conversion claim can be based upon unsolicited facsimiles absent advertising content, such faxes cannot trigger TCPA liability and, thus, cannot fall within the "arising out of" language of the exclusions. In support, Addison points to paragraph 15 of the amended complaint that alleges that members of the class received "the same *or similar*" unsolicited facsimiles. According to Addison, the two words "or similar" leave open the possibility that some class members (albeit, not Addison, who, mind you, held itself out as the class representative in the *Domino* case) may have received unsolicited faxes that did not contain advertisements and thus state claims other those actionable under the TCPA. This argument suffers from two fatal flaws.

First, this exact argument was handily rejected by the appellate court in *G.M. Sign.* There, the court found that the same argument advanced by G.M. Sign amounted to a contention that "the vagueness of [the] amended complaint is the very virtue that triggered [the insurance company's] duty to defend." *G.M. Sign*, 18 N.E.3d at 79. Put another way, Addison "argues nothing more than that it should be allowed to avoid application of the policy exclusion by deliberately and strategically leaving its complaint so bereft of factual allegations that myriad unpleaded scenarios could fall within its scope." *Id.* Discussing both the Illinois and federal pleading standards, the *G.M. Sign* court rejected such a paradigm as unworkable. "A court can rationally apply [the rules governing the duty to defend in Illinois] only if the underlying complaint contains sufficient factual allegations to constitute a valid pleading." *Id.* This Court holds the same.

Addison's reliance upon the phrase "or similar" fails for a separate and independent reason. The conversion claim in Addison's amended complaint incorporates the allegations made in paragraph 15. *See* Pl.'s LR 56.1(b)(3)(B) Stmt., Ex. 9 (First Amended Complaint), ¶ 31. Paragraph 15 also formed the basis for the TCPA claim. *Id.* at ¶ 17. Therefore, the injury and damage alleged in the conversion claim arises directly or indirectly out of an "action . . . that *is alleged* to violate" the TCPA. *See* Defs.' LR 56.1(a)(3) Stmt. ¶ 10; *id.* ¶ 11 (emphasis added). The injury and damage alleged in the conversion claim thus fall within the plain language of the exclusionary provisions. Although Addison valiantly tries to create an ambiguity, "the court must not create an ambiguity where none exists; a clear and unambiguous provision must be applied as written." *Hurst-Rosche Engineers, Inc.*, 51 F.3d at 1342.

Addison also argues that the titles of the TCPA exclusions indicate that they do not apply to common-law claims for conversion, because they refer to statutory violations and not common law claims. Admittedly, the titles of the TCPA exclusions contain the phrase "Violation of Statutes," and the TCPA exclusions reference various statutes. *See* Defs.' LR 56.1(a)(3) Stmt. ¶¶ 10–11. But this Court does not construe a contractual provision by looking at its title alone. *See Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992) ("[T]he court must construe the policy as a whole," including the words of the policy); *see also Westport Ins. Corp. v. Jackson Nat. Life Ins. Co.*, 900 N.E.2d 377, 380 (Ill. App. Ct. 2008) (examining title but noting that "it is the actual language of a policy that ultimately controls the determination of what risks are covered"). As explained above, the TCPA exclusions' language forms the core of the contractual inquiry. This language is unambiguous, and its operation dispositive.[5]

---

[5] Because the Court finds that no coverage exists with respect to the allegations made in the Amended Complaint, the Court need not decide whether the Amended Complaint was tendered to the insurers for defense in a timely manner.

Addison's remaining arguments suffer similar fates. First, Addison cites to two policy exclusions from competing insurers containing broad language covering "unsolicited communications." *See* Pl.'s Mem. Opp'n 11–12 (citing St. Paul Fire & Marine Insurance Co. and Travelers Indemnity Co. policies). But Addison does not include the St. Paul Fire & Marine and Travelers Indemnity policies in its Local Rule 56.1 Statement of Material Facts. Consequently, this Court has no basis to consider them. *See Bordelon v. Chi. Sch. Reform Bd. of Tr.*, 233 F.3d 524, 527–529 (7th Cir. 2000) (district court can demand "strict compliance with its local rules governing summary judgment" and consequently "the district court is entitled to limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' statements").

But even assuming, *arguendo*, that these policies were properly before the Court, Addison's argument is unavailing. Essentially, Addison contends that Defendants could have chosen broader language for their TCPA exclusions. But Addison cites to no legal authority making the policies of other insurers relevant to this Court's analysis of the exclusions at issue here. Moreover, the Court does not find the TCPA exclusion to be ambiguous, foreclosing consultation of extrinsic evidence, such as policies of other insurers. *See Traveler's Ins. Co. v. Eljer Mfg.*, 757 N.E.2d 481, 496 (Ill. 1997) (extrinsic evidence only consulted if contractual provision is ambiguous).[6]

Second, Addison points to six Illinois trial court decisions and one federal court case from a different district. *See* Pl.'s Mem. Opp'n 13. The Illinois trial court decisions predate the ruling in *G.M. Sign* and are unpersuasive. The lone federal court decision, *Nationwide Mutual*

---

[6]      Addison offers two cases from the Fourth and Eighth Circuits. *See Ferrell v. W. Bend Mut. Ins. Co.*, 393 F.3d 786, 793 (8th Cir. 2005); *Rossman v. State Farm Mut. Auto. Ins. Co.*, 832 F.2d 282, 289 (4th Cir. 1987). *Ferrell* concerned different insurance policies under Wisconsin state law. *Rossman*, while applying Illinois law, involved automobile insurance. Neither case concerned TCPA claims.

*Insurance Co. v. Harris Medical Associates, LLC*, 973 F. Supp. 2d 1045, 1054 (E.D. Mo. 2013), was decided under Missouri law and was distinguished expressly by *G.M. Sign*. *See* 18 N.E.2d at 80 (noting three reasons *Nationwide Mutual* was not persuasive).

Addison attempts, with great élan, to avoid the clear operation of the TCPA exclusions and diminish the persuasiveness of *G.M. Sign*. But its attempts fall short. A plain reading of the TCPA exclusions reveal that they encompass claims for injury or damage that arise directly or indirectly out of any actions that are alleged to have violated the TCPA. The underlying complaints in the *Domino* lawsuit concerned unsolicited facsimiles that allegedly violated the TCPA. Therefore, the TCPA exclusions precluded any coverage for defense of the underlying lawsuit and foreclosed any duty to indemnify.

## B.    No Coverage for Conversion Claim Under "Property Damage Caused By An Occurrence"

Alternatively, Defendants argue that there is no coverage for the underlying claims because the harm caused by sending unsolicited faxes does not constitute "property damage" caused by an "occurrence" as defined by the insurance policies. As noted, the insurance policies cover "property damage" caused by an "occurrence." *See* Defs.' LR 56.1(a)(3) Stmt. ¶ 10, 11. Both policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* Defendants argue, correctly, that the insurance policy only provides coverage for *accidental* property damage. The allegations of the underlying complaint do not trigger coverage because the use of the paper and ink was an expected, not unplanned, result. Along these lines, the Seventh Circuit has held that "junk faxes use up the recipients' ink and paper, but senders *anticipate* that consequence." *Am. States Ins. Co. v. Capital Assoc. of Jackson Cnty., Inc.*, 392 F.3d 939, 943 (7th Cir. 2004) (emphasis added) (interpreting insurance policy under Illinois law). This interpretation therefore "forecloses

coverage when the recipient's loss is 'expected or intended from the standpoint of the insured.'" *Id.* (quoting policy language); *see also Maxum Indem. Co. v. Eclipse Mfg. Co.*, 848 F. Supp. 2d 871, 880 (N.D. Ill. 2012) (no coverage where "expected or intended" exclusionary language applied and "[t]he underlying complaint alleged that a recipient of unauthorized faxes 'loses the use of its fax machine, paper, and ink toner'").

Addison contends that contrary decisions in Illinois courts limit or foreclose this Court's reliance on *American States*. But in *Bridgeview Health Care Center v. State Farm Fire & Casualty Co.*, the Illinois Supreme Court did not consider whether a conversion claim could be "property damage" under an "occurrence" because the issue was not disputed. *See* 10 N.E.3d 902, 905 (Ill. 2014). Although an Illinois appellate court has criticized the holding in *American States*, *see Insurance Co. of Hanover v. Shelbournes Associates*, 905 N.E.2d 976 (Ill. App. Ct. 2009), and the Illinois Supreme Court has criticized *American States* for a separate discussion of "privacy" concerns not at issue here, *see Valley Forge Ins. Co. v. Swiderski*, 860 N.E.2d 307, 320–21 (Ill. 2006), this Court remains bound by Seventh Circuit precedent. *See Maxum Indem. Co.*, 848 F. Supp. 2d 881 at n.11.

When Domino sent a fax, it expected that the recipient's fax machine would use ink and paper to print that fax. The underlying complaint alleged that Domino purposefully sent the faxes to market its services, *see* Defs.' LR 56.1(a)(3) Stmt., Ex. A., ¶¶ 13. Accordingly, the use of paper and ink caused by the transmission of the unsolicited facsimiles was not accidental.

## C.   Additional Discovery Pursuant to Rule 56(d) Is Not Necessary

Finally, Addison asks the Court to defer ruling on Defendants' summary judgment motion and requests additional discovery pursuant to Federal Rule of Civil Procedure 56(d). Under Rule 56(d) "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons,

it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). Rule 56(d) "is intended as a safeguard against a premature grant of summary judgment." *King v. Cooke*, 26 F.3d 720, 726 (7th Cir. 1994). It "authorizes a district court to refuse to grant a motion for summary judgment or to continue its ruling on such a motion pending further discovery if the nonmovant submits an affidavit demonstrating why it cannot yet present facts sufficient to justify its opposition to the motion." *Woods v. City of Chic.*, 234 F.3d 979, 990 (7th Cir. 2000).

"The Seventh Circuit has instructed that courts should construe Rule 56(d) liberally." *Cent. Contracting, Inc. v. Kenny Const. Co.*, No. 11 C 9175, 2012 WL 832842, at *2 (N.D. Ill. 2012) (citing *King*, 26 F.3d at 726). But Rule 56(d) "is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious." *Korf v. Ball State Univ.*, 726 F.2d 1222, 1230 (7th Cir. 1984). Rule 56(d) places the burden on the nonmovant opposing summary judgment to "state the reasons why the party cannot adequately respond to the summary judgment motion without further discovery." *Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006). If the reasons identified by the non-movant are not material to the summary judgment ruling, and the district court's decision would not differ if discovery were conducted, a district court is within its discretion to deny the Rule 56(d) motion. *See Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 628 (7th Cir. 2014).

The Court denies Addison's motion because Addison has not met its burden under Rule 56(d). Addison argues it needs additional discovery to determine: (1) whether Defendants provided the necessary reduction in coverage notices to Domnio when it added the TCPA

exclusions to the policies; and (2) whether Defendants filed the TCPA exclusion with the New York Department of Insurance prior to including it in Domino's insurance policy. *See* Pl.'s Mem. Opp'n 7. To support the relevancy of these inquiries, Addison cites various statutes, treatises, and cases from Illinois and New York, including: 215 Ill. Comp. Stat. 5/143.17a, McKinney's N.Y. Ins. Law § 3426(e), *Guillen ex rel. Guillen v. Potomac Ins. Co. of Ill.*, 785 N.E.2d 1 (Ill. 2003), and *Essex Ins. Co. v. Vickers*, 103 A.D.3d 684, 686 (N.Y. App. Ct. 2013). Addison's Rule 56(d) declaration also contains the additional contentions that (1) Defendants did not fully answer interrogatories in this case; and (2) despite Defendants' representation that the Hartford Policy's TCPA exclusion was part of the original policy issued to Domino, the Hartford Policy included a "Policy Changes" endorsement suggesting it was a renewal. *See* Pl.'s Mem. Opp'n, Ex. 6, Oppenheim Decl., ¶¶ 13, 17, 18–19, 21. Addison's contentions, however, do not justify forestalling decision of the summary judgment motion.

The primary deficiency in Addison's motion is that it "fail[s] to set forth any specific evidence which they might have obtained from [discovery sought]" that would create a genuine issue of material fact. *See Davis v. G.N. Mort. Corp.*, 396 F.3d 869, 885 (7th Cir. 2005). Addison's only specific request is to depose one of Defendants' employees on whether Defendants received notice of the First Amended Complaint in the underlying lawsuit. But this would not create an issue of material fact because, as discussed above, even assuming the First Amended Complaint in the underlying lawsuit were tendered properly, the Court would still find that it fell within the scope of the TCPA exclusions. *See Grayson v. O'Neill*, 308 F.3d 808, 816 (7th Cir. 2002) (Rule 56(d) motion is "flawed" if the evidence sought is not relevant to the case). At its core, Addison's Rule 56(d) motion is "based on nothing more than mere speculation and

would amount to a fishing expedition" of the kind courts routinely discourage. *Davis*, 396 F.3d at 885.

Additionally, Addison does not adequately explain why it could not have obtained the discovery it now claims it needs during the discovery phase of these proceedings. As Defendants point out, Addison could easily have sought discovery from Domino or lodged an information request with or issued a subpoena to the New York Department of Insurance to determine whether the TCPA exclusions were part of the original insurance policies, whether Defendants had provided the proper notices to the parties, and whether Defendants had filed the TCPA exclusions with the New York Department of Insurance. *See* Defs.' Reply 5–6. "When a party fails to secure discoverable evidence due to his own lack of diligence, it is not an abuse of discretion for the trial court to refuse to grant a continuance to obtain such information." *Pfeil v. Rogers*, 757 F.2d 850, 857 (7th Cir. 1985). Addison "had more than ample opportunity to discover and present evidence" that would call into question the validity of the TCPA exclusions, and its failure to do so does not justify delaying a ruling on the summary judgment motion before the Court. *See Grayson*, 308 F.3d at 816.

For these reasons, the Court exercises its discretion and denies Addison's request for additional discovery under Rule 56(d).

### IV. Conclusion

For the reasons provided herein, the Court grants Defendants' motion for summary judgment [78]. Civil case terminated.

**SO ORDERED**

ENTER:

JOHN Z. LEE
**United States District Judge**

22